UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**PETER NYGARD, et al.,**

    **Plaintiffs,**

v.                                                                                    Case No: 8:15-cv-1939-T-33EAJ

**JACKY JASPER, et al.,**

    **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Before the Court is Plaintiffs Peter Nygard, et al.'s ("Plaintiffs'") **Motion for Entry of Default Judgment against Defendant**.[1] (Dkt. 17) The motion was sent by Plaintiffs' counsel to Defendant Jacky Jasper ("Defendant") via certified mail on November 23, 2015. (Dkt. 21) Defendant has failed to file a timely response to the motion.

Defendant was personally served the summons on August 19, 2015 (Dkt. 8), and has failed to answer or otherwise respond to Plaintiffs' complaint. The Clerk entered default against Defendant (Dkt. 14), and Plaintiffs now move for entry of default judgment against Defendant pursuant to Rule 55(b)(2), Fed. R. Civ. P. Plaintiffs request that judgment as to liability be entered as to all counts, that a permanent injunction be issued, and that the Court conduct a hearing on damages, attorneys' fees, and costs. (Dkt. 17)

### Background

On August 19, 2015, Plaintiffs filed a complaint against Defendant and John or Jane Does

---

[1] This matter has been referred to the undersigned for consideration and issuance of a Report and Recommendation. See 28 U.S.C. § 636(b)(1)(B); Local Rules 6.01(b) and 6.01(c), M.D. Fla.

1-10, alleging claims of defamation/libel per se, trademark dilution in violation of 15 U.S.C. § 1125 and Fla. Stat. § 495.151, invasion of privacy, intentional infliction of emotional distress, and defamation/libel by implication. (Dkt. 1)

Plaintiffs Nygard International Partnership and Nygard, Inc. ("Nygard Entities") manufacture, advertise, and distribute high-quality merchandise. (Id. ¶ 12)  Plaintiff Peter Nygard ("Plaintiff Nygard") is principal, beneficial owner, and a prominent figure with respect to the Nygard Entities. (Id. ¶ 13)  The Nygard Entities have used various trademarks, including several registered with the United States Patent and Trademark Office. (Id. ¶ 14)  Plaintiffs state that Defendant is an individual with several aliases, including Sean Merrick, Greg Comeau, and Hollywood Street King, who authors content and publishes it on his website, "Hollywood Street King."[2] (Id. ¶ 5) Plaintiffs' allegations arise from alleged tortious activities committed by Defendant through postings on his website.

As early as February 6, 2012, Defendant, through his website, has posted false allegations regard Plaintiff Nygard's private personal life, which Plaintiffs assert has been an attack on the reputation of Plaintiff Nygard and the Nygard Entities. (Id. ¶ 24)  A number of postings were published beginning in February 2014 containing written content, images, video footage, electronic message boards, commentary, and other material concerning Plaintiff Nygard's private life and the Nygard Entities, many of which included images of Plaintiff Nygard and the Nygard Entities'

---

[2] The website is accessible via the URL's www.DiaryofaHollywoodStreetKing.com and www.HollywoodStreetKing.com. (Dkt. 1 ¶ 5) Defendant also disseminates information through other distribution channels, including Twitter, Facebook, and YouTube. (Id. ¶ 6)

trademarks.[3] (Id. ¶ 30)  Plaintiffs contend that the postings falsely state or suggest that Plaintiff Nygard "is a dishonest and immoral person who engages in sexually repugnant, unlawful, and nefarious activities and with whom people should not conduct business." (Id. ¶¶ 31, 36)

Plaintiffs state that the February 25, 2014 posting features Plaintiff Nygard's name and image and an unauthorized reproduction of one of the Nygard Entities' trademarks. (Id. ¶ 34)  The February 27, 2014 posting includes two videos of Plaintiff Nygard that were filmed in his home and that Plaintiffs contend were "illegally obtained as [Plaintiff] Nygard did not consent to the recording of his voice or image and the footage was obtained on his property without his permission." (Id. ¶ 37)  The February 28, 2014 posting contains "an unauthorized reproduction of an audio visual work that contains material that was created and owned by Plaintiffs." (Id. ¶ 38)  The March 3, 2014 and April 23, 2014 postings include one of the Nygard Entities' trademarks. (Id. ¶¶ 39, 40)

## Legal Standard

When a party has failed to plead or defend an action, the court may enter judgment by default. Fed. R. Civ. P. 55(b)(2).  "[W]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit

---

[3] Among the postings are: a February 11, 2014 posting entitled "Peter Nygard Pays for His Sexual Deviance . . . ."; a February 25, 2014 posting entitled "Fashion Tycoon Peter Nygard Paid $10K To Make Scat Video To [sic] Go Away!"; a February 27, 2014 posting entitled "Peter Nygard's Sadist Wrath Caught On Camera!"; a February 28, 2014 posting entitled "Peter J. Nygard Exposed Doctoring Death to Cheat Death!"; a March 3, 2014 posting entitled "Suspected Peter Nygard Notes Point To 2010 Death as MURDER!"; an April 23, 2014 posting entitled "Ex-Whore Wrangler Exposes Peter Nygard as a RACIST & SADIST!"; a May 8, 2014 posting entitled "Peter Nygard's Penis Pump Sexapades w/ Mr. Rikk Exposed!"; a July 11, 2014 posting entitled "James Bond (Sean Connery) vs. Peter "The Sadist" Nygard"; and a December 12, 2014 posting entitled "Beverly Johnson Follows Protocol: Rolls on Cosby, Covers For The Other Man." (Dkt. 1 ¶¶ 31, 34, 36, 38-43)  Plaintiffs believe that the February 11, 2014 posting was initially published by Defendant sometime in 2012. (Id. ¶ 31)

conclusions of law." Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005) (alteration omitted). Entry of default judgment is warranted only when there is "a sufficient basis in the pleadings for the judgment entered." Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[4]

The standard for entering default judgment is "akin to that necessary to survive a motion to dismiss for failure to state a claim." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." Id. To survive a motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

## Discussion

### A.     Trademark Dilution Claims (Counts II and III)

"[T]o succeed on a trademark infringement claim, a plaintiff must prove (1) that its valid mark was used in commerce by the defendant without consent, and (2) that the unauthorized use was likely to cause confusion, to cause mistake, or to deceive." Bentley Motors Corp. v. McEntegart, 976 F. Supp. 2d 1297, 1310 (M.D. Fla. 2013). "'[D]ilution by tarnishment' is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). The standard under Florida law is virtually identical to

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

that of federal law. Fla. Stat. § 495.151; Rain Bird Corp. v. Taylor, 665 F. Supp. 2d 1258, 1267 (N.D. Fla. 2009).

Here, Plaintiffs' complaint alleges that the Nygard Entities' marks are registered with the United States Patent Office, that the marks have been continuously and exclusively used in commerce by Plaintiffs, and that Plaintiffs have expended millions of dollars advertising and promoting the marks. (Dkt. 1 ¶¶ 14-19) Additionally, Plaintiffs state that Defendant has used the marks without authorization in connection with false and defamatory statements concerning Plaintiff Nygard. (Id. ¶¶ 34-35, 38-40) Plaintiffs contend that Defendant's intention in using the marks was to impugn the value of the Nygard Entities and that the continued unauthorized use of the marks continues to dilute the marks. (Id. ¶¶ 79-86)

Plaintiffs' allegations are admitted as true based upon Defendant's failure to timely respond. Accordingly, Plaintiffs have established trademark dilution claims under the Lanham Act and Florida law because Plaintiffs' marks were used in commerce and their unauthorized use by Defendant was intended to create negative associations. Additionally, Plaintiffs have established that their brand was harmed on account of Defendant's conduct. Accordingly, Defendant is liable for trademark dilution under 15 U.S.C. § 1125(c)(2)(C) and Fla. Stat. § 495.151.

**B.    Defamation/Libel Per Se (Count I) and Defamation/Libel by Implication (Count VII) Claims**

Under Florida law, "[d]efamation (libel and slander) may generally be defined as the unprivileged publication of false statements which naturally and proximately result in injury to another." Byrd v. Hustler Magazine, Inc., 433 So.2d 593, 595 (Fla. 4th DCA 1983). To establish a defamation claim under Florida law, a plaintiff must prove: (1) the defendant published a

5

statement; (2) the statement is false; (3) the statement is defamatory; (4) the defendant acted at least negligently in publishing the statement; and (5) resulting damages. See Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008). "[A] defamatory statement is one that tends to harm the reputation of another by lowering him or her in the estimation of the community or . . . one that exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation." Id. at 1108-09; see also Belli v. Orlando Daily Newspapers, Inc., 389 F.2d 579, 582 (5th Cir. 1967) ("libel per se is any publication which exposes a person to distrust, hatred, contempt, ridicule, obloquy").

Additionally, Florida law recognizes the tort of "defamation by implication." Rapp, 997 So. 2d at 1108. "[I]f the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts, he may be held responsible for the defamatory implication, unless it qualifies as an opinion, even though the particular facts are correct." Id.

Plaintiffs allege that Defendant has published a number of false statements on the internet through various articles suggesting that Plaintiff Nygard "is a dishonest and immoral person who engages in sexually repugnant, unlawful, and nefarious activities and with whom people should not conduct business." (Dkt. 1 ¶¶ 31, 36) Additionally, Plaintiffs aver that Defendant knew that the articles contained false information and intended to cause harm to Plaintiff Nygard's business, reputation, or occupation and damaged his integrity, character, and professional competence. (Id. ¶ 67) Additionally, the postings were intended to disparage the Nygard Entities and resulted in damage to reputation, integrity, and consumer confidence of the Nygard Entities, exposing the Nygard Entities to public hatred, ridicule, aversion, contempt, distrust, and disgrace. (Id. ¶ 68)

Plaintiffs have suffered irreparable injury and substantial damages on account of Defendant's defamatory statements. (Id. ¶¶ 73, 75-78) Accordingly, Defendant is liable for Plaintiffs' defamation claims for libel per se and libel by implication.

### C.      Intentional Infliction of Emotional Distress Claim (Count V)

The tort of outrage, also called intentional infliction of emotional distress, has four elements:

> (1) The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotion[al] distress was severe.

Winter Haven Hosp., Inc. v. Liles, 148 So. 3d 507, 515 (Fla. 2d DCA 2014) (citation omitted) (alteration in original). "For conduct to be sufficiently outrageous, it must be 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Tillman v. Orange Cty., Fla., 519 F. App'x 632, 636 (11th Cir. 2013) (per curiam) (unpublished)[5] (quoting Lopez v. Target Corp., 676 F.3d 1230, 1236 (11th Cir. 2012)).  Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not a question of fact. Gandy v. Trans World Computer Tech. Group, 787 So.2d 116, 119 (Fla. 2d DCA 2001).

Plaintiffs allege that Defendant intentionally posted false information on the Internet regarding Plaintiff Nygard being engaged in criminal conduct and sexually repugnant acts. (Dkt. 1 ¶ 100)  Additionally, Defendant posted Plaintiff Nygard's direct personal e-mail address and telephone number. (Id. ¶ 98) Defendant's actions, Plaintiffs allege, were deliberately calculated and

---

[5] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

intended to and did cause Plaintiff Nygard severe emotional distress. (Id. ¶ 99) Defendant's publication of the postings regarding Plaintiff Nygard can reasonably be said to be outrageous, according to Florida law. As a result of Defendant's conduct, Plaintiff Nygard alleges that he has experienced humiliation, mental anguish, and severe emotional distress, as well as irreparable harm and substantial damages. (Id. ¶¶ 100-02) Accordingly, Defendant is liable for the tort of intentional infliction of emotional distress against Plaintiff Nygard.

**D.     Invasion of Privacy Claim (Count IV)**

"No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use . . . ." Fla. Stat. § 540.08. Florida recognizes three categories of privacy torts: (1) appropriation, (2) intrusion, and (3) public disclosure of private facts. Oppenheim v. I.C. Sys., Inc., 695 F. Supp. 2d 1303, 1308 (M.D. Fla. 2010). Florida law defines intrusion as "physically or electronically intruding into one's private quarters." Allstate Ins. Co. v. Ginsberg, 863 So.2d 156, 162 (Fla. 2003). "To constitute an invasion of privacy, the intrusion must be highly offensive to a reasonable person." Oppenheim, 695 F. Supp. 2d at 1309 (citation omitted). A claim for intrusion must allege the same kind of outrageous behavior as required for intentional infliction of emotional distress. Id. at 1308.

Plaintiffs state that Defendant knowingly used Plaintiff Nygard's name, image, and voice without Plaintiff Nygard's consent or authorization. (Dkt. 1 ¶ 88) On his website, Defendant posted illegally obtained videos of Plaintiff Nygard in his home. (Id. ¶ 37) Plaintiffs aver that the videos do not relate to the public interest and "are replete with inaccuracies and are materially and substantially false." (Id. ¶ 91) The posting of the videos by Defendant violated Plaintiff Nygard's

privacy, and their posting has caused damage to the Nygard Entities by diminishing the value of their brand. Furthermore, as Plaintiffs have established a claim for intentional infliction of emotional distress, they have also established that Defendant's conduct is outrageous. Accordingly, Defendant is liable for Plaintiffs' invasion of privacy claim.

**E.     Plaintiffs' Request for Injunctive Relief**

In the complaint, Plaintiffs request that Defendant be permanently enjoined and restrained from: (1) using the Nygard Entities' trademarks in any manner; (2) making and disseminating defamatory statements regarding Plaintiffs and assisting, aiding, and abetting others from doing the same; and (3) engaging in any conduct or act which would reasonably be foreseen to harass any of the Plaintiffs. (Dkt. 1 at 25-26) Plaintiffs also request that Defendant be ordered to delete and permanently remove all of the postings mentioned in the complaint and all content displaying unauthorized reproductions of the Nygard Entities' trademarks or defaming Plaintiffs from any websites in Defendants' possession, custody, or control. (Id. at 26)

Even in a default judgment case, injunctive relief is appropriate pursuant to the Lanham Act and common law.[6] A plaintiff seeking a permanent injunction must demonstrate: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and

---

[6] "The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a). See also Ordonez v. Icon Sky Holdings LLC, No. 10-60156-CIV, 2011 WL 3843890, at *8 (S.D. Fla. Aug. 30, 2011) (granting permanent injunction pursuant to defendant's default in case involving trademark infringement and libel per se claims).

defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc., 522 F.3d 1200, 1208 (11th Cir. 2008). A permanent injunction in a trademark infringement case may be entered although a plaintiff's damages have not been determined. See Maurer Rides USA, Inc. v. Beijing Shibaolia Amusement Equip. Co., Ltd., No. 6:10-cv-1718-Orl-37KRS, 2012 WL 2469981, at *1 (M.D. Fla. May 30, 2012), report and recommendation adopted in part sub nom. 2012 WL 2463834 (M.D. Fla. June 27, 2012).

Plaintiffs have established that they have suffered irreparable harm and have no adequate remedy at law by virtue of Defendant continuing to post articles containing Plaintiffs' trademarks and false and defamatory statements. "[T]rademark infringement by its nature often results in irreparable harm and that there is generally no adequate remedy at law." Bioclin BV v. Multygyn USA, LLC, 72 F. Supp. 3d 1288, 1296 (M.D. Fla. 2014) (citing Tally–Ho, Inc. v. Coast Comm. Coll. Dist., 889 F.2d 1018, 1029 (11th Cir. 1989)). Furthermore, any harm to Defendant, such as loss of advertising revenue, is outweighed by the continued injury to Plaintiffs if their trademarks and the false and defamatory statements remained. Finally, the public interest would be served if Defendant is enjoined from continuing to publish false statements about Plaintiffs and infringing Plaintiffs trademarks. See, e.g., Angel Flight, 522 F.3d at 1209 ("[C]omplete injunctions against the infringing party are the order of the day. The reason is simple: the public deserves not to be led astray by the use of inevitably confusing marks.").

Accordingly, Plaintiffs are entitled to a permanent injunction against Defendant, enjoining Defendant from:

    (a)    using Plaintiffs' trademarks referenced in the Complaint in commerce in a manner

    that is likely to cause dilution of the trademarks;

(b) engaging in any act or conduct foreseeably or reasonably calculated or expected to harass Plaintiff Nygard;

(c) distributing or disseminating, posting, copying, publishing, displaying, transmitting, transferring, or otherwise making available over the Internet, including on Defendant's website and in connection with Defendant's social media accounts, the postings referenced in the complaint and any video, audio, or other recording of Plaintiff Nygard taken without his consent or otherwise in violation of law, including two videos posted on February 27, 2014 (posted at http://diaryofahollywoodstreetking.com/peter-nygards-sadist-wrath-caught-on-camera/) and one video posted on February 28, 2014 (posted at http://diaryofahollywoodstreetking.com/peter-j-nygard-exposed-doctoring-death-to-cheat-death/);

(d) distributing, disseminating, posting, copying, publishing, displaying, transmitting, transferring, or otherwise making available over the internet any materials that violate Plaintiff Nygard's rights of privacy or publicity or his right to be free from harassment; and

(e) assisting, directing, authorizing, ordering, facilitating, aiding, or abetting, whether directly or indirectly, any other individual or entity in engaging in or performing any of the activities referenced above.

Additionally, Plaintiff are entitled to an order requiring that:

(a) Defendant delete and permanently remove all material displaying unauthorized

        reproductions of the Nygard Entities' trademarks and/or containing false and defamatory statements of and concerning Plaintiffs from the website, Defendant's social media accounts, and any other website or internet platform in Defendant's direct or indirect possession, custody, or control, including the postings referenced in the Complaint and certify compliance within five (5) days of the Judgment; and

(b)    the webhost and/or registrar or registry for the domains at issue delete and permanently remove such materials and/or transfer the domains to Plaintiffs should Defendant fail to take action in accordance with the order.

**F.    Hearing on Damages, Attorneys' Fees, and Costs**

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." Miller v. Paradise of Port Richey, Inc., 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). Following the entry of a default judgment, a district court may conduct an evidentiary hearing to: conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2); see also Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003) (hearing on damages may be conducted following entry of default judgment).

Plaintiffs seek actual, compensatory, exemplary, and punitive damages that include lost earnings, income and business opportunities, and litigation costs and expenses including attorneys' fees. (Dkt. 1 ¶¶ 77-78, 95-96, 102) As Plaintiffs' damages continue to accrue as a result of Defendant's conduct, Plaintiffs should be afforded a reasonable period of time after the entry of judgment as to Defendant's liability to file evidence and request a hearing on their damages, fees,

and costs.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) Plaintiffs' Motion for Entry of Default Judgment Against Defendant (Dkt. 17) be **GRANTED**;

(2) judgment of liability be entered in favor of Plaintiffs as to counts I, II, III, IV, V, VI, and VII of the Complaint, a permanent injunction be entered against Defendant from engaging in the activities discussed herein, and an order be entered requiring Defendant to remove certain content from his website and social media accounts;

(3) Plaintiffs are directed to serve a copy of this Report and Recommendation on Defendant within five (5) days;

(4) Plaintiffs be afforded a reasonable period of time if judgment is entered in its favor to present evidence and request a hearing on damages, fees, and costs.

**DATE: January 4, 2016.**

ELIZABETH A JENKINS
United States Magistrate Judge

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

Copies to:
Counsel of Record
Pro Se Parties
District Judge